UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EARL WARNER,

       Plaintiff,

    v.

C. TILESTON, et al.,

       Defendants.

Case No. 16-cv-04100-YGR (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Earl Warner brings the instant *pro se* action, pursuant to 42 U.S.C. § 1983, stemming from constitutional violations resulting from his alleged retaliatory transfer in 2011 from Salinas Valley State Prison ("SVSP")[1] to Pleasant Valley State Prison ("PVSP"), where he claims his enemies were housed, instead of transferring him to the Richard J. Donovan Correctional Facility ("RJD"), where he had no safety concerns. The operative pleading is Plaintiff's original complaint (Dkt. 1), which the Court has reviewed.

In an Order dated January 12, 2017, the Court determined that the complaint raised cognizable claims against the following Defendants: California Department of Corrections and Rehabilitation ("CDCR") Appeals Examiner C. Tileston; and the following persons at SVSP: Correctional Captains R. Binkele[2] and W. Muniz; Classification and Parole Representative S.

---

[1] This Order contains many acronyms. Here, in one place, they are:

| | |
|---|---|
| ASU | Administrative Segregation Unit |
| CDCR | California Department of Corrections and Rehabilitation |
| CSR | Classification Staff Representative |
| CCI | Correctional Counselor I |
| CCII | Correctional Counselor II |
| ICC | Institutional Classification Committee |
| PVSP | Pleasant Valley State Prison |
| R&R | Receiving and Release |
| RJD | Richard J. Donovan Correctional Facility |
| SVSP | Salinas Valley State Prison |

[2] Defendant Binkele was initially sued and served as "R. Binkle," and the Court now corrects the inadvertent misspelling of this Defendant's name.

Gomez; Appeals Coordinator E. Medina; Correctional Counselor I ("CCI") J. Jackson;

Correctional Counselor II ("CCII") Specialists V. Solis and Williams[3]; and Acting Chief Deputy

Warden A. Solis. *See* Dkt. 4. The following summary of Plaintiff's claims is taken from the

Court's January 12, 2017 Order of Service, which states as follows:

> Plaintiff alleges that (1) all named Defendants acted with deliberate indifference to his safety needs by willfully transferring Plaintiff to [PVSP] where he was likely to suffer "grave personal injury by enemies"; (2) all named Defendants' aforementioned actions were in retaliation for Plaintiff filing grievances[4]; (3) Defendants Medina, Muniz, A. Solis, V. Solis, Jackson, and Tileston violated Plaintiff's right to due process by denying his "appeals concerning safety issues with being transferred to [a] prison[] known to be proliferated with his enemies" because they knew of the aforementioned constitutional violations and did nothing to remedy it; (4) [Defendants] Gomez, Williams, A. Solis, V. Solis, Medina, and Jackson violated Plaintiff's right to due process by "facilitating [his] removal from the scheduled transportation list, for transfer to [RJD] with the aim of causing [him] to be transferred to a prison where he was likely to suffer personal injury" as retaliation for his filing grievances; and (5) Defendants Medina, Solis, Jackson, and Tileston violated Plaintiff's constitutional rights when they "failed to record in [his] Central File Record, [his] safety concerns" as retaliation for his filing grievances.

*Id.* at 3 (citing Dkt. 1 at 32-34[5]) (brackets and footnote added).

The Court dismissed Plaintiff's claims for injunctive relief as moot. *Id.* at 2. The Court

found that, liberally construed, Plaintiff's remaining claims for monetary damages were

cognizable under section 1983. *Id.* at 2-3. The Court directed the Clerk of the Court to serve the

complaint and issued a briefing schedule for the served Defendants to file a dispositive motion.

*See id.* at 3-5.

On July 21, 2016, all of the aforementioned Defendants except for Defendant Williams

(hereinafter "Defendants") filed the instant Motion for Summary Judgment. Dkt. 49. They argue

---

[3] To date, Defendant Williams has not yet been served. However, as explained below, the Court will resolve all claims against this unserved Defendant after it has resolved all claims against the served Defendants.

[4] The Court notes that the complaint also alleged that Defendants acted out of retaliation for a previous lawsuit he filed in Case No. C 09-4081 JW (PR). Dkt. 1 at 13, 16-17, 19, 22, 28, 33-34.

[5] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

that (1) Plaintiff's claims fail because he only partially exhausted his administrative remedies and filed them well beyond the statute of limitations; (2) there is no evidence that Defendants violated Plaintiff's First, Eighth, or Fourteenth Amendment rights; and (3) Defendants are entitled to qualified immunity. *Id.* at 8. Specifically, Defendants argue that: (a) "Plaintiff's First and Eighth Amendment claims fail because the officials making Plaintiff's transfer recommendations did so to advance a legitimate correctional goal, not as a result of any protect activity by Plaintiff, and only after evaluating Plaintiff's safety and security needs"; (b) "Plaintiff's Fourteenth Amendment claim fails because his challenges to the appeal decisions and his inability to transfer to the prison of his choice are not implicated by due process"; and (c) "Defendants are entitled to qualified immunity for Plaintiff's damages claims because it would not be clear to them that they were violating clearly established law when they made or reviewed a recommendation that Plaintiff be transferred to one of two prisons where he had no safety concerns." *Id.* at 8-9. Plaintiff has opposed the motion, and Defendants have filed their reply. Dkts. 62, 66.

For the reasons outlined below, the Court GRANTS Defendants' motion for summary judgment on the merits of all claims.

## II.     DISCUSSION

### A.     Background

#### 1.  The Parties

At the time of the events set forth in his complaint, Plaintiff was an inmate housed in SVSP. Dkt. 1 at 8.

From 2010 to 2011, Defendant Tileston was employed as an Appeals Examiner at the CDCR's Office of Appeals. Tileston Decl. ¶ 1.

Defendants Binkele, Gomez, Jackson, Muniz, A. Solis, V. Solis, and Williams are, or were at the time of the events alleged in Plaintiff's complaint, members of the custody staff at SVSP. Dkt. 1 at 5-12. Defendant A. Solis is currently retired. A. Solis Decl. ¶ 1.

From 2005 to July 2017, Defendant Medina was the Appeals Coordinator at SVSP. Medina Decl. ¶ 1. Defendant Medina is currently retired. *Id.*

3

### 2. Relevant SVSP Policies[6]

#### a. Prison Transfers

Because this case stems from an alleged retaliatory prison transfer, the Court shall first review SVSP's policy on prison transfers.

Inmates who are endorsed for a prison transfer by a Classification Staff Representative ("CSR") are added to the Automated Transfer System, a list maintained by the Population Management Unit, at headquarters for the CDCR in Sacramento, California. Gomez Decl. ¶ 4. The staff, along with the Population Management Unit, will then review the case factors of the inmates endorsed for transfer, evaluate the prisons where the inmates are endorsed to transfer, and generate the Send/Intake Report, which includes the inmate's prison transfer schedule. *Id*. The Send/Intake Report is then forwarded to the transferring institution's Classification and Parole Representative, who then sends the transfer schedule to the transferring institution's Receiving and Release ("R&R") department, which facilitates and carries out the prison transfer. *Id*.

#### b. Placement in Administrative Segregation Unit

Prior to being transferred to another prison, Plaintiff was housed in SVSP's Administrative Segregation Unit ("ASU"). Therefore, the Court shall also include information relating to SVSP's policy relating to an inmate's placement in ASU.

"When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation." Cal. Code Regs., tit. 15, § 3335(a). "An inmate's placement in segregation shall be reviewed by the Institutional Classification Committee ("ICC") within 10 days of receipt in the unit and under provisions of section 3338(a) of these regulations. Action shall be taken to retain the inmate in segregation or release to general population." *Id*. § 3335(c). "When, pursuant to this section, an ICC retains an inmate on segregation status, the case shall be referred to a [CSR] for

---

[6] All policies cited are referenced as of the 2010-2011 time frame during which Plaintiff was endorsed for transfer to PVSP.

review and approval." *Id*. § 3335(d) (brackets added).

"Inmate retention in administrative segregation beyond the initial segregation ICC hearing shall be referred for CSR review and approval within 30 days and then thereafter in accordance with subsection (d) above. In initiating such reviews an ICC shall recommend one of the following possible outcomes: (1) Transfer to another institution in accordance with section 3379; (2) Transfer to a Segregated Program Housing Unit in accordance with section 3341.5; and (3) Retention in segregation pending completion of an active investigation into an alleged violation of the rules/disciplinary process, an investigation of other matters, or resolution of criminal prosecution. In such instances an ICC shall offer a reasonable projection of the time remaining for the resolution of such matters." *Id*. § 3335(e)(1)-(3).

### c. Documentation of Inmate Concerns

Because Plaintiff alleges that he was transferred to a prison with safety concerns, the Court also includes SVSP's procedure relating to the documentation of inmate concerns.

> Any information regarding an inmate/parolee which is or may be critical to the safety of persons inside or outside an institution shall be documented as required below on a CDC Form 812. . . . The CDC Form[] 812 . . . and all documents referred to on the form[] shall be filed in the central file of each identified inmate/parolee.

Cal. Code Regs., tit. 15, § 3378(a) (brackets added). The CDC Form 812 shall be updated as any critical information becomes known and is documented in the inmate/parolee's central file. *Id*. § 3378(b)(1). The form shall also be reviewed and updated at the time of any change in the inmate/parolee's status or placement." *Id*.

### 3. Background Relating to Plaintiff's Safety Concerns and Placement Decisions

While housed at SVSP, Plaintiff had concerns about his personal safety based on his knowledge of certain inmates' illegal activities. Dkt. 1 at 10. Plaintiff asserts that he ". . . had been privy to certain information about illegal activities of other inmate(s) . . . and that based upon [his] knowledge of such activities, there were serious concerns with regard to [his] personal safety . . . ." *Id*. (brackets added). Plaintiff explains that "the serious risk to [his] personal safety [] involved both the 'Two Five' and the 'Northern Rider': Security Threat Groups, of which the Department has complete knowledge of as Sensitive Needs Yard (S.N.Y.) prison gangs." *Id*. at 10

(brackets added).  According to his complaint, Plaintiff also notes a third Security Threat Group, "Independent Riders," who "are in alliance with the Two-Five group." *Id*.

The information Plaintiff had been privy about was obtained while he was working in the main kitchen area of SVSP's Facility A, where members of the 'Northern Rider' Security Threat Group were ". . . directly involved with a narcotic[] and cellphones trafficking scheme involving the officer working the third watch, building three floor." *Id*. at 10-11.  Plaintiff goes on to explain

> . . . how a bad deal had caused these inmate[s] to plot a contracted stabbing incident against several inmate[s] friendly with plaintiff; and how plaintiff had revealed the plot to the other inmate[s] after discovering it on the job site; resulting in the northern rider group inmate[s] taking out a contract for plaintiff's murder with the two-five group, and their independent rider alliance member[s].

*Id*. at 11 (brackets added).

### a.  Placement at SVSP's ASU Pending Safety Concerns

On or about April 16, 2010, Plaintiff was transferred to SVSP's ASU pending an investigation into his self-expressed safety concerns.  Pacifico Decl., Ex. A at 27-28.

On April 20, 2010, Defendant Williams reviewed and updated the CDC Form 812 in Plaintiff's central file, documenting Plaintiff's non-confidential enemies.  Jackson Decl. ¶ 4, Ex. A.

On April 22, 2010, Plaintiff appeared before the ICC for initial review of Plaintiff's self-expressed safety concerns.  Pacifico Decl., Ex. A. at 31-33.  The ICC consisted of a panel of correctional staff who evaluated whether inmates should remain in the ASU, return to SVSP's general population, or move to another state prison.  Medina Decl. ¶ 1.  Defendants A. Solis and Binkele were two of the four committee members of the ICC.  Pacifico Decl., Ex. A at 31-33.  In his declaration, Defendant Binkele explained the process of how the status of inmates in SVSP's ASU is reviewed.  Binkele Decl. ¶ 5.  First, Plaintiff's CCII (such as Defendant Williams or Defendant Jackson) evaluates and updates the CDC Form 812s in Plaintiff's central file.  *Id*. ¶ 7. The members of the ICC, who in this action includes Defendants A. Solis and Binkele, then "reviews an inmate's case factors and makes a recommendation for retention in ASU or transfer to

6

another institution . . . ." *Id.* ¶ 9. Thereafter, a CSR makes an endorsement. *Id.* Here, the ICC recommended that Plaintiff remain in the ASU pending a completion of the investigation into Plaintiff's self-expressed safety concerns and sought a sixty-day extension from CSR Garcia to make a housing recommendation. Pacifico Decl., Ex. A. at 31-33. CSR Garcia agreed with the ICC's recommendation and asked for a status update by June 21, 2010. *Id.* The ICC cleared Plaintiff to be double-celled in ASU in the meantime. Dkt. 1 at 10. Plaintiff alleges this created the possibility that an inmate from one of the Security Threat Groups could be ". . . placed into Plaintiff's assigned cell and subsequently [cause] plaintiff serious harm." *Id.* at 10 (brackets added).

On May 17, 2010, Defendant Williams again reviewed and updated the CDC Form 812 regarding inmates listed as Plaintiff's non-confidential enemies. Jackson Decl. ¶ 4, Ex. A at 2.

### b. Recommendation to Transfer to Either RJD or PVSP

On May 20, 2010, Plaintiff appeared before the ICC for further review, and, again, Defendants A. Solis and Binkele were two of the four ICC members. Pacifico Decl., Ex. A. at 36-38. Defendant Williams acted as Plaintiff's case manager. Dkt. 1 at 13. Defendant Williams "proposed that plaintiff be transferred to High Desert State Prison (H.D.S.P.), with an alternate of [PVSP]." *Id.* at 13 (brackets added). Plaintiff notes that High Desert State Prison "is a well known hub for each of the security threat groups established as [his] enemies . . . ." *Id.* at 13 (brackets added). Plaintiff also notes that PVSP "is also a systematically well known hub of security threat group active member[s] and associates. . . . Plaintiff strongly objected to his being transferred to either prison under the circumstances of the confirmed threat to his personal safety." *Id*. at 13 (brackets added). Defendant Williams countered, "contending that plaintiff had documented enemies in every other institution/facility." *Id*. at 14. Plaintiff countered back "with the fact that he had no enemies at [RJD]." *Id*. (brackets added). Defendants A. Solis and Binkele and the two other members of the ICC noted that the investigation into Plaintiff's self-expressed safety concerns was complete, determined that Plaintiff had confidential enemies housed on SVSP's Facility A, and, after evaluating Plaintiff's case factors and potential safety concerns, recommended his transfer to another Level IV Sensitive Needs Yards institution—either the RJD

or PVSP. Pacifico Decl., Ex. A. at 36-38. Defendant A. Solis directed Defendant Williams to refer Plaintiff for transfer to RJD. Dkt. 1 at 14. Plaintiff alleges thereafter that Defendant Williams "discreetly leaned inward . . . and stated, 'Don't be surprised if you don't get [the RJD transfer]." *Id*. at 10 (brackets added).

### c. Endorsement to Transfer Plaintiff to RJD

On June 1, 2010, CSR Dixon endorsed Plaintiff to be transferred to RJD with continued ASU housing until the transfer, with the transfer endorsement expiring on September 29, 2010. Binkele Decl. ¶ 14; Pacifico Decl., Ex. A at 36-38.

On May 23, 2010, Plaintiff submitted an appeal to Defendant Medina, claiming that Defendant Williams was attempting to transfer Plaintiff to an institution housing known enemies "as a reprisal for the exercise of First Amendment rights." Dkt. 1 at 15. In his complaint, Plaintiff states that Defendant Medina, was indifferent to his appeal, returning it to Plaintiff and directing him to submit the appeal to Defendant Muniz instead for informal resolution. *Id*. Plaintiff returned the appeal back to Defendant Medina with citations to departmental policy and procedure related to the exemption of certain appeals from informal resolution. *Id*. Defendant Medina returned the appeal to Plaintiff once again, insisting that he submit the appeal to Defendant Muniz, for informal resolution in a directive dated June 2, 2010. *Id*. Plaintiff forwarded the appeal to Defendant Muniz, who neither responded not returned the appeal. *Id*. at 16. Defendant Medina noted to Plaintiff that he emailed Defendant Williams and inferred that since Plaintiff had already been endorsed to transfer to RJD, there was no sense in his processing Plaintiff's appeal concerning the motives of Defendant Williams. *Id*. at 17. Plaintiff's appeal was not assigned a log number. *Id*.

On June 16, 2010, Plaintiff submitted appeal log no. SVSP-L-10-01583 to Defendant Medina's office, seeking to meet with a CCII to document the enemies in his central file because he believed that not all of his enemies were properly documented. *Id*. at 18; Monroy Decl. ¶ 17, Ex. B.; Jackson Decl. ¶ 14. In his declaration, Defendant A. Solis explained the process of reviewing appeals. A. Solis Decl. ¶ 15. First, a "staff member would conduct an interview with the inmate . . . Another staff member would then conduct an inquiry into the appeal, including a

8

review of the inmate's central file." *Id.* Thereafter, "[t]hat staff member would then make findings and recommendations for [Defendant A. Solis'] review and approval." *Id*. (brackets added). Here, Defendants V. Solis and Muniz conducted the first level inquiry and recommended that the appeal be partially granted at the first level of review to the extent that Plaintiff sought to meet with a counselor to discuss his enemy concerns, and that Plaintiff would be scheduled for an interview with Defendant Jackson on July 20, 2010. Jackson Decl. ¶ 14; Monroy Decl. ¶ 17, Ex. B at 14. Due to an administrative error, the interview actually took place on August 18, 2010. Jackson Decl. ¶ 14. Plaintiff sought a second level review of the decision. Monroy Decl. ¶ 17, Ex. B at 10. CCII Burgh conducted the second level inquiry of the appeal, and recommended "that the appeal be partially granted . . . because Plaintiff was interviewed by staff and his central file was updated to reflect his enemy concerns." A. Solis Decl. ¶ 16. Defendant A. Solis reviewed, affirmed, and approved the recommendation at the second level of review. *Id*.; Monroy Decl. ¶ 17, Ex. B at 3-4. Plaintiff sought a third level review of the appeal, and Appeals Examiner M. Broddrick and M. Hodges (for Inmate Appeals Branch Chief D. Foston) determined that no modification order was warranted and denied the appeal. Voong Decl., Ex. B at 3.

In a letter dated July 21, 2010, Plaintiff notified Defendant A. Solis of Defendant Williams' retaliatory aims in collaboration with other members of SVSP staff. Dkt. 1 at 22. In her response, Defendant A. Solis indicated that the endorsement for Plaintiff's transfer to RJD was still in effect and that Plaintiff was "next on the transfer list." Dkt. 1 at 23.

### d. Failure to Transfer Plaintiff to RJD

On or about July 26, 2010, Plaintiff was advised by the segregation unit property officer that a fellow inmate, who had been endorsed for transfer to RJD several weeks following Plaintiff's endorsement, had already transferred to RJD. *Id*. at 20. On the same day, Plaintiff submitted appeal log no. SVSP-L-10-02013, alleging that his transfer to RJD was interfered with due to retaliation by SVSP staff for his civil complaint against Defendant Williams and other prison officials (Case No. 3:09-cv-04081-JW) filed on September 2, 2009, and he sought to know why he was not transferred to RJD. Monroy Decl. ¶ 19, Ex. D at 18. Plaintiff believed that the staff had abused its discretionary authority by removing his own name from the transportation list

9

for transfer to RJD. Dkt. 1 at 21. Defendant Medina conducted an interview with Plaintiff at the first level of review. Monroy Decl. ¶ 19, Ex. D at 4. Correctional Administrator Soto informed Plaintiff that the transfer did not occur because Plaintiff's case factor documentation was not completed by the time he was to transfer to RJD. *Id*. at 2. Specifically, Plaintiff's case factors were not completed at the time of the bus arrival to reserve him a seat for transfer. *Id*. Plaintiff was never removed from the transportation list. *Id*. Plaintiff sought a second level review, and Defendant Medina was assigned this appeal at the second level. *Id*. at 4. Defendant Medina recommended the appeal be partially granted to the extent that Plaintiff was told why he was not transferred to RJD. A. Solis Decl. ¶ 18. Defendant A. Solis reviewed and approved the recommendation at the second level of review. *Id*. at 18; Monroy Decl. ¶ 19, Ex. D at 5. Plaintiff sought a third level review of the determination, but Chief Foston and Appeals Examiner Stark determined that no modification order was warranted and denied the appeal at the third level. Voong Decl. ¶ 9, Ex. D at 2-3.

On August 18, 2010, Defendant Jackson interviewed Plaintiff to discuss Plaintiff's safety concerns following appeal log no. SVSP-L-10-01583 that Plaintiff had submitted requesting to meet with a CCII to document the enemies in his central file. Monroy Decl. ¶ 17; Jackson Decl. ¶ 14 at 3; Voong Decl. ¶ 7, Ex. B at 13.

On August 30, 2010, Defendant Jackson reviewed and updated Plaintiff's CDC Form 812 regarding inmates listed as non-confidential enemies with Plaintiff. Jackson Decl. ¶ 4, Ex. A at 3.

On September 2, 2010, Plaintiff again appeared before the ICC, and Defendants Binkele and V. Solis were two of the four members of the ICC. Pacifico Decl., Ex. A at 41. The ICC recommended that "Plaintiff be referred to a CSR for an extension on Plaintiff's endorsement to transfer to either RJD or [PVSP]." Binkele Decl. ¶ 15 (brackets added). A CSR did not evaluate the recommendation because "a CDC 1283 was not obtained from medical in time to be seen by the CSR. A CDC 1283 is a medical report concerning the inmate's medical condition." *Id*. Thus, the ICC was unable to receive one because medical staff did not provide the CSR with an update on Plaintiff's medical status prior to the transfer endorsement's expiration. Pacifico Decl., Ex. A at 41; Gomez Decl. ¶ 12.

The original endorsement to transfer Plaintiff to RJD expired on September 29, 2010. Voong Decl., Ex. D at 2.

On October 6, 2010, Defendant Jackson again reviewed and updated Plaintiff's CDC Form 812, documenting Plaintiff's non-confidential enemies. Jackson Decl. ¶ 4, Ex. A at 3.

On October 7, 2010, Plaintiff appeared before the ICC for further review, and Defendants Binkele and V. Solis were two of the four members of the ICC who recommended that Plaintiff transfer to RJD or PVSP after a review of Plaintiff's case factors and potential enemy concerns *Id.* at 47-51; Jackson Decl. ¶ 4, Ex. A at 3.

### e. Endorsement and Facilitation of Transfer of Plaintiff to PVSP

On October 26, 2010, CSR Ligon endorsed Plaintiff for transfer to PVSP because RJD was not currently available. Pacifico Decl., Ex. A at 47-51. Specifically, "RJD did not have bed space available to accept Plaintiff as a Level IV SNY inmate." Binkele Decl. ¶ 16; V. Solis Decl. ¶ 12.

According to Defendant Gomez, she "assisted in facilitating the prison transfer once the determination had been made." Gomez Decl. ¶ 14. In her declaration, Defendant Gomez explained the process of how such transfers are facilitated. *Id.* ¶ 4. First, Plaintiff was added to the Automated Transfer System, which is a list regarding CSR inmate transfer endorsements. *Id.* Staff will then review the case factors of the inmates endorsed for transfer, evaluate the prisons where the inmates are endorsed to transfer, and generate the Send/Intake Report, which includes the inmate's prison transfer schedule. *Id.* The record shows that Plaintiff's CDCR Form 812, which including Plaintiff's non-confidential documented enemies had been reviewed and updated on four separate occasions: April 20, 2010, May 17, 2010, August 30, 2010 and October 6, 2010. Jackson Decl. ¶ 4, Ex. A. Thereafter, a Send/Intake Report would be generated, which includes Plaintiff's transfer schedule, and this report was sent to SVSP's Classification and Parole Representative, who in this action is Defendant Gomez. Gomez Decl. ¶ 4. Defendant Gomez received Plaintiff's Send/Intake report, and she stated that "someone from [her] office, typically a CCII (such as Defendant Williams or Defendant Jackson), would review the central files of Plaintiff to confirm that he had no safety concerns at the receiving institution. *Id.* (brackets added). Defendant Gomez then sent the report to SVSP's R&R department, which was tasked

11

with facilitating and carrying out the prison transfer.  *Id.*

On November 4, 2010, Plaintiff submitted appeal log no. SVSP-10-03011, alleging that he was erroneously endorsed for transfer to PVSP despite having enemy concerns at the prison and sought to be transferred to RJD or Mule Creek State Prison.  Monroy Decl. ¶ 18, Ex. C at 4.  On November 10, 2010, the appeal was bypassed at the first level and received a second level review, where Defendant V. Solis recommended that the appeal be denied because Plaintiff had no documented enemies there.  *Id* at 2-3; V. Solis Decl. ¶ 16.  Defendant A. Solis reviewed and approved the recommendation at the second level.  *Id.*  Dissatisfied, Plaintiff sought a third level review of the decision.  Voong Decl. ¶ 8, Ex. C.  According to Defendant Tileston, he "handled [appeal log no. SVSP-10-03011] at the third level of review. . . . [and] recommended that relief was not warranted . . ."  Tileston Decl. ¶ 5-6 (brackets added).  In his declaration, explained what factors into determining whether or not to grant an appeal at the third level of review.  *Id.* ¶ 4.  First, an Appeals Examiner, who in this action is Defendant Tileston, conducts his or her own inquiry into the matter.  *Id.*  Defendant Tileston considered "the findings and recommendations of the first and second levels of review, as well as [Plaintiff's] central file."  *Id.* (brackets added).  In addition "[w]hen determining whether a modification order should be issued regarding a prison transfer, [he] would consider, among other things, any findings and recommendations of the second level investigator, as well as the Institutional Classification Committee recommendation and the [CSR] endorsement."  *Id.* (brackets added).  Chief Foston reviewed and approved Defendant Tileston's recommendation.  Voong Decl. ¶ 8, Ex. C at 2-4.

### f.  Transfer to PVSP

On January 6, 2011, Plaintiff was transferred to PVSP.  Pacifico Decl., Ex. A at 12.  There is no record of Plaintiff being assaulted by another inmate at PVSP.  Levya Decl. ¶¶ 5-6; Morgan Decl. ¶¶ 5-6.

On January 19, 2011, Plaintiff was called to meet with the ICC, and Plaintiff advised the committee that he was in serious danger at PVSP based on a warning he had received from an influential member of the Northern Rider Security Threat Group.  Dkt. 1 at 29.  The ICC directed that the inmate Plaintiff mentioned be brought in for questioning, but the inmate later denied

sending a warning to Plaintiff. *Id.* at 29-30. Following the meeting, PVSP staff assigned Plaintiff and the inmate to the same housing unit. *Id.* at 31. Plaintiff resisted and was placed in mechanical restraints as he was forced into the newly assigned housing unit. *Id.* Plaintiff alleges he observed inmates circling his cell during meal releases. *Id.*

On January 20, 2011, Plaintiff suffered a nervous breakdown in the cell, "inflicting two (2) larceration[s] to his left wrist and, requiring eighteen (18) sutures to mend." *Id.* at 32 (brackets added). Plaintiff was admitted to the California Medical Facility. *Id.*; Pacifico Decl., Ex. A at 12.

On February 15, 2011, Plaintiff was transferred out of PVSP. Pacifico Decl., Ex. A at 12.

### 4. Detailed Explanation of Relevant 602 Appeals

#### a. 602 Appeal Log No. SVSP-L-10-01583 (Retaliation Based on Failure to Document Safety Concerns)

The record shows that on June 16, 2010, Plaintiff filed a CDC 602 Form or "Inmate/Parolee Appeal," which was given log no. SVSP-L-10-01583—relating to the retaliation claim in connection with enemy documentation and safety concerns. Voong Decl., Ex. B at 4-5.

In this appeal, when asked to "[d]escribe [his] problem," Plaintiff specifically states as follows:

> On 5/20/2010, during a[n] I.C.C. meeting . . . I discovered that my central file did not contain a record of known enemy(s) currently housed at H.D.S.P. On 5/23/2010, I submitted a CDC-602, . . . including the name of one particular inmate (Roderick Brown), to the Appeals Coordinators Office for processing after having this appeal returned to me twice . . . I forwarded the appeal to the Office of the Facility 'A' Captain - for 'Informal Resolution' - however, I have not received this original appeal back to date, nor have I been notified of any affirmative action(s) . . . And although I have been advised that on 6/1/2010, I was 'endorsed' for transfer to (RJD)-IV, I remain concerned that absent appropriate preventive action, potentially, one, or more, of my enemies could be transferred there . . . .

*Id.* at 4, 6 (brackets added). In response to "[a]ction requested," Plaintiff stated: "Prompt assignment to the appropriate CCI or CCII for initiation of process of investigating and listing of known enemies within the 812 Section of my Central File without further delay." *Id.* at 4 (brackets added).

On July 8, 2010, Defendants V. Solis and Muniz sent a first level response, which stated the following:

13

1
2

> The appellant was interviewed on 06/30/2010 by J. Jackson, CCI.
> During the interview, the appellant stated he had nothing further to
> add.

3
4
5

> The first level reviewer determined the appellant should be
> interviewed by a counselor at open line and the enemy concerns
> addressed and documented fully within the central file. Therefore
> the appellant will be scheduled for our of [sic] cell open line
> interview with CCI J. Jackson on 07/20/2010.

6

> . . .

7

> The appeal is PARTIALLY GRANTED.

8

*Id*. at 12 (brackets added).

9

      On July 20, 2010, Plaintiff indicated that he was dissatisfied with the first level response,

10

and stated as follows: "Appellant was not afforded the personal interview of open-line meeting as

11

indicated by first level respond[e]nt. CCI Jackson; therefore the issue is not substantially resolved

12

and cannot be absent . . . ." *Id*. at 5 (brackets added).

13

      On August 18, 2010, Defendant A. Solis signed off on the second level response,

14

and stated as follows:

15
16

> The First Level of Review (FLR) was completed by Correctional
> Counselor II V. Solis on July 8, 2010.

17

> . . .

18
19
20

> The appellant was granted an interview with his assigned counselor
> at the FLR. This interview was not completed due to administrative
> error. Subsequently CCI J. Jackson interviewed the subject on
> 08/18/2010. CCI J. Jackson has evaluated the information obtained
> during the interview and documented the appropriate enemy
> concerns in accordance with departmental policy and procedure.

21
22
23

> . . .The appeal is partially granted as the appellant requests the
> enemies be documented within the 812 section of his central file;
> however per policy and procedure there are enemies that must be
> listed only on the 812C as they are confidential enemies.

*Id*. at 13 (brackets added).

24
25

      On August 31, 2010, Plaintiff indicated his dissatisfaction, stating that "1st and 2nd level

26

respon[s]es deprives appellant of due process and equal protection of the law . . . ." *Id*. at 5

(brackets added).

27
28

      Plaintiff sought a third level review of the appeal, and, at the third level, Appeals Examiner

1  M. Broddrick and M. Hodges (for Chief Foston) determined that no modification order was

2  warranted and denied the appeal. *Id*. at 3.

3  **b. 602 Appeal Log No. SVSP-L-10-02013 (Failure to Transfer to RJD)**

4  The record shows that on July 26, 2010, Plaintiff filed a CDC 602 Form or

5  "Inmate/Parolee Appeal" which was given log no. SVSP-L-10-02013—relating to the due process

6  claim stemming from the failure to transfer Plaintiff to RJD even after he was endorsed for such a

7  transfer. Voong Decl., Ex. D at 4-5.

8  In this appeal, when asked to "[d]escribe [his] problem," Plaintiff specifically states as

9  follows:

10  > That Sgt. Jensen or other R&R staff member(s) cause[d] me to
    > suffer extended stays in Ad. Seg. Unit and other gr[i]evious losses
11  > by removing my name from [the] current list for inmate transfers to
    > [RJD], absent legitimate cause for such action. I was endorsed and
12  > placed on list for transfer on/or about 6/1/2010. Inmate Ingram
    > (DB-202/3) who was endorsed on 1/15/2010 was actually
13  > transfer[r]ed to [RJD] approx. three (3) weeks ago. When I asked
    > the property officer (Brown) why I was not transferred with inmate
14  > Ingram since I was ahead of him on the list, I was informed "If you
    > were on that list you'd be gone already."

15  *Id*. at 4 (brackets added). In response to "[a]ction requested," Plaintiff stated: "Explanation for not

16  being on list for transfer to [RJD] for last transport which included inmate Ingram; reason for

17  remov[al] from the list; current status as relate[d] to transfer to [RJD]." *Id*. (brackets added).

18  On July 29, 2010, SVSP-L-10-02013 was denied at the first "[i]nformal level" of review.

19  *Id*. (brackets added). The staff response states as follows: "Denied. This is not an R&R issue.

20  Your transfer was cancelled by the assistant CMPR at SVSP. You were removed from the list by

21  them and not transfer[r]ed." *Id*. (brackets added). The response was in all caps and did not have a

22  signature. *Id*.

23  On August 2, 2010, Plaintiff indicated that he was dissatisfied with the first level response,

24  and stated as follows: "Although this appeal/complaint was sent to R&R Sgt. Jensen for informal

25  resolution it [was] return[ed] absent a signature allows me only to assume it was his response in

26  Section 'C.' Notwithstanding, neither R&R staff, [n]or the Assistant CMPR has provided me with

27  notice, or legitimate cause for removing me from list." *Id*. (brackets added).

28  On August 4, 2010, the appeal was granted at the first level. *Id*. at 5. The August 13, 2010

15

first level appeal response states as follows:

> Correctional Administrator, J. Soto reviewed this appeal at the
> FIRST Level of Review (FLR). All submitted documentation and
> supporting arguments have been considered. The appellant is
> endorsed for transfer to RJD Correctional Facility as believed. The
> appellant was not transferred with inmate Ingram because his case
> factors were not completed at the time of the bus arrival to reserve
> him a seat for transfer. The appellant was never removed from the
> 'list.' The appellant['s] current status for transfer to RJD is active
> and the Classification and Parole Representative orders a seat for
> potential transfer every week. Once a bus seat is provided to SVSP
> for the appellant . . . he will be transferred accordingly.

*Id*. at 10 (brackets added).

On September 1, 2010, Plaintiff indicated that he was dissatisfied with the first level response, and stated as follows:

> On 9-1-10, I was informed by D1 Ad. Seg. Property Officer
> (Brown) that a bus was leaving SVSP for [RJD] on 9-2-10; however
> only one inmate endorsed for such a transfer had been 'trans-
> packed' for departure. On 8-6-10, A. Solis ([Acting Chief Deputy
> Warden]) informed me that I was "next on the transfer list" to
> [RJD], therefore 1st Level respon[s]e is clearly false and misleading.

*Id*. at 5 (brackets added).

On September 2, 2010, the appeal was granted at the second level. *Id*. The September 21, 2010, second level appeal response states as follows:

> CCII E. Medina, Appeals Coordinator, was assigned this appeal at
> the Second Level of Review (SLR). . . . The appellant's central file
> was reviewed at the SLR. The review determined the following: the
> appellant was placed in the [ASU] on April 16, 2010 pending
> investigation. On May 20, 2010, the appellant was seen by the
> [ICC] and the appellant was recommended for alternate level IV
> Sensitive Needs Yard (SNY) placement. The appellant was
> subsequently endorsed by the [CSR] on June 1, 2010 for RJD-IV
> (SNY).
>
> The FLR noted that the appellant's case factors were not completed
> yet on June 1, 2010 which precluded the appellant's opportunity to
> transfer to RJD. The review of the central file confirmed this as the
> appellant was not endorsed until June 1, 2010.
>
> At the SLR, it is noted that the appellant was seen again on
> September 2, 2010 by ICC and again recommended for transfer.
> The appellant's case is currently under review by the CSR for
> determination.
>
> In as much as the appellant is rightfully expecting to transfer, the
> institution's staff and administration are not given the authority to

16

transfer inmates at will. Each institution is provided with a variable number of bus seats to other, specific institutions. The appellant has not been singled out as many other inmates are waiting to transfer to other institutions.

Although every effort is made to transfer endorsed inmates, population management needs substantially restrict the institutions ability to complete the transfer.

In this light, this review finds that the appellant's request is partially granted. The appellant, if re-endorsed to RJD [he] will be transferred as soon as his name is reached on the waiting list and there is a bus seat available for him.

. . .

The appeal is PARTIALLY GRANTED.

*Id*. at 12-13 (brackets added).

On September 28, 2010, Plaintiff indicated that he was dissatisfied with the second level response. *Id*. at 5.

On March 11, 2011, the appeal was denied at the third level by Appeals Examiner D. Stark and Chief Foston. *Id*. at 2. The findings at the third level are as follows:

The documentation and arguments are persuasive that the appellant did not support his appeal issues with sufficient evidence or facts to warrant a modification of the SLR. The institution has presented the appellant a thorough and comprehensive review of the issues and the examiner finds no basis to alter the SLR decision. The examiner notes the appellant's arguments that he should be transferred; however, as noted in the SLR, the transfer recommended by the ICC was being reviewed by the CSR at the time. The previous CSR endorsement expired on September 29, 2010. The examiner notes that the R&R staff has no control or influence of the transfer list and there is no evidence they removed his name as he alleges. As noted in the FLR, the appellant was never removed from the transfer list. He was not transferred at the same time as Inmate Ingram because his case factors had not been completed at the time the bus with his reserved seat arrived at the SVSP. The appellant has not provided any additional information that would support any modification to SLR. Therefore, relief at the Director's Level of Review is not warranted.

*Id*.

#### c. 602 Appeal Log No. SVSP-L-10-03011 (Retaliatory Transfer to PVSP)

The record shows that on November 4, 2010, Plaintiff filed a CDC 602 Form or "Inmate/Parolee Appeal" which was given log no. SVSP-L-10-03011—relating to the retaliation and deliberate indifference claims in connection with Plaintiff's endorsement to PVSP. Voong

17

Decl., Ex. C at 6, 8.

In this appeal, when asked to "[d]escribe [his] problem," Plaintiff states that he was previously endorsed for transfer to RJD but that changed due to the retaliatory actions of Defendants Solis, Williams, and Jackson." *Id.* at 2, 6 (brackets added). As summarized in the Director's Level Appeal Decision:

> [Plaintiff] claims the staff acted with malicious intent to subvert the court motion for order to transfer the appellant to RJD. He claims it is common knowledge that the gangs "two-five" and "northern riders" are assaulting other inmates. The appellant contends that based upon the presence of potential enemies at the PVSP, his transfer endorsement represents gross negligence and a deliberate indifference to the appellant's safety.

*Id.* at 2 (brackets added).

In response to "[a]ction requested," Plaintiff requests that his appeal be processed as an emergency appeal. *Id.* at 6 (brackets added).

The first level of review was bypassed, and Plaintiff was interviewed by Defendant Jackson on November 16, 2010. *Id.* at 6-7; Monroy Decl., Ex. C at 2. According to the Second Level Appeal Response, Plaintiff "was afforded the opportunity to further explain his appeal issue and to provide any supporting evidence or documents. The appellant stated he had nothing further to add. This concluded the interview." Monroy Decl., Ex. C at 2.

The appeal was assigned to Defendant V. Solis at the second level of review, and, on November 16, 2010, Defendant A. Solis signed off on the second level response, stating that "[a]t the SLR, the reviewer determined PVSP IV SNY is an appropriate endorsement as the subject does not have any specific substantiated enemies at PVSP IV SNY. . . . The appeal is DENIED." *Id.* at 2-3 (brackets added).

On November 21, 2010, Plaintiff indicated his dissatisfaction and sought a third level review of the appeal. Voong Decl., Ex. C at 7. Defendant Tileston and Chief Foston's decision at the third level of review stated that no modification order was warranted and denied the appeal. *Id.* at 3.

## B. Legal Standard for Summary Judgment

Federal Rules of Civil Procedure 56 provides that a party may move for summary

judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*; *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028–29 (9th Cir. 2001).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendants have presented their own declarations (except for unserved Defendant Williams) as well as declarations from the following: Defendants' attorney Bryan Kao; California Institute for Men Litigation Coordinator Levya; SVSP Appeals Coordinator Monroy; PVSP Appeals Coordinator Morgan; Custodian of Inmate Records Pacifico; and CDCR's Chief of the Office of Appeals M. Voong (Dkt. 49). Meanwhile, Plaintiff filed his verified complaint (Dkt. 1), verified opposition to Defendants' motion (Dkt. 62), verified declaration in opposition to Defendants' motion (Dkts. 63), and verified supplement to his declaration in opposition to Defendants' motion (Dkt. 74). The Court will construe these filings as affidavits under Federal Rules of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). However, "self-serving affidavits are cognizable to

establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

### C.    Analysis of Deliberate Indifference Claim Against Defendants

Plaintiff alleges that all named Defendants were deliberately indifferent to his safety needs by willfully transferring him to PVSP where he was likely to suffer "grave personal injuries by enemies." Dkt. 1 at 32-33.

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

A prisoner may state a section 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner, *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody), or by physical conditions at the prison. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See Farmer*, 511 U.S. at 837. However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *See id.* at 842; *see also Lemire v. Cal. Dept. Corrections &*

20

*Rehabilitation*, 726 F.3d 1062, 1078 (9th Cir. 2013) (articulating two-part test for deliberate indifference: plaintiff must show, first, that risk was obvious or provide other evidence that prison officials were aware of the substantial risk to the inmates' safety, and second, no reasonable justification for exposing inmates to risk). This is a question of fact. *Farmer*, 511 U.S. at 842; *see, e.g., Cortez*, at 1050-52 (reversing grant of summary because, when viewed in the light most favorable to plaintiff, sufficient evidence showed (1) that undermanned escort by one prison guard of three mutually hostile, half-restrained, high-security inmates through an isolated passage posed a substantial risk of harm; and (2) that escorting officer was aware of the risk involved); *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (finding no deliberate indifference to prisoner's safety where the record, viewed objectively and subjectively, did not lead to an inference that the prison officials responsible for making the prisoner's cell assignment were aware that he faced a substantial risk of harm).

A trier of fact may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious; a plaintiff therefore may meet his burden of showing awareness of a risk by presenting evidence of very obvious and blatant circumstances indicating that the prison official knew the risk existed. *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) ("risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious"). But while obviousness of risk may be one factor in demonstrating subjective knowledge, a defendant's liability must still be based on actual awareness of the risk rather than constructive knowledge. *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). While a prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs, deliberate indifference will not be found where there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of substantial risk to the prisoner. *Labatad*, 714 F.3d at 1160-61. The official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault." *Berg*, 794 F.2d at 459. Before being required to take action, he must, however, have more than a "mere suspicion" that an attack will occur. *Id.; see, e.g., id.* at

1    460 (stating summary judgment appropriate as to defendants when plaintiff "failed to come

2    forward with facts showing that these defendants had any reason to believe he would be attacked

3    by the assailant").

4         Defendants argue that Plaintiff fails to show that they were deliberately indifferent in their

5    investigation of Plaintiff's safety concerns and their prison transfer recommendations and

6    decisions. Dkt. 49 at 19-23.   Defendants Gomez, Muniz, and Medina assert that they were not

7    involved in the decision to transfer Plaintiff to PVSP because they were not members of the ICC

8    in 2010, they did not endorse Plaintiff for transfer as a CSR, and they did not conduct any inquiry

9    or decision regarding Plaintiff's appeal challenging the transfer. *Id*. at 21.   Defendants also assert

10   that the actual decision to endorse Plaintiff for transfer to PVSP was made by non-party CSR

11   Ligon on October 26, 2010. *Id*.   Defendants Binkele and V. Solis point out that, as members of

12   the ICC in 2010, they recommended Plaintiff to be transferred to either RJD or PVSP because

13   there were no documented enemy concerns at either prison. *Id*.   With respect to the appeal

14   challenging the PVSP endorsement, Defendant Jackson asserts that he was not involved in the

15   appeal decision because he only interviewed Plaintiff regarding the appeal. *Id*. at 22.   Defendants

16   A. Solis, V. Solis, and Tileston assert that they conducted an inquiry into the appeal, found no

17   potential threat against Plaintiff at PVSP, and made their decision to deny the appeal based on

18   those findings. *Id*.   In addition, Defendants point out that Plaintiff sets forth no evidence to

19   suggest he was ever injured while at PVSP. *Id*. at 23.   Considering that Plaintiff's documented

20   enemies were repeatedly evaluated prior to his transfer to PVSP, Defendants assert that SVSP staff

21   had no reason to suspect any potential safety concerns for Plaintiff at PVSP. *Id*.   Defendants argue

22   that the evidence demonstrates they had no knowledge of any potential safety concerns, and,

23   therefore, their motion for summary judgment should be granted. *Id*.

24        In opposition, Plaintiff asserts the same allegations found in his complaint and refers to a

25   self-serving declaration that fails to set forth any evidence that Defendants' conduct was

26   sufficiently serious and was done with deliberate indifference to Plaintiff's safety. *See* Dkt. 63.

27        After viewing all the evidence submitted, the Court finds that there is no genuine issue of

28   material fact with respect to Plaintiff's claim that Defendants acted with deliberate indifference to

his safety. The undisputed facts show that none of the nine named Defendants were directly responsible for making the actual endorsement to transfer Plaintiff to PVSP. (As Defendants pointed out the record shows that the decision to endorse Plaintiff to PVSP was made by CSR Ligon on October 26, 2010. Pacifico Decl., Ex. A at 51.) Instead, the undisputed evidence shows that Defendants were involved in: (1) recommending the transfer to either RJD or PVSP (Defendants Binkele, A. Solis, and V. Solis); (2) reviewing appeal relating to the due process claim stemming from the failure to transfer Plaintiff to RJD even after he was endorsed for such a transfer (Defendant Medina); (3) reviewing Plaintiff's non-confidential enemy list prior to endorsement to PVSP (Defendants Jackson and Williams); (4) reviewing the appeal relating to the retaliation claim in connection with enemy documentation and safety concerns (Defendant Muniz); (5) reviewing the appeal relating to the endorsement to PVSP (Defendant Tileston); or (6) facilitating the transfer to PVSP (Defendant Gomez). Binkele Decl. ¶ 14; A. Solis Decl. ¶ 14, 18; V. Solis Decl. ¶ 4, 11; Jackson Decl. ¶ 4; Muniz Decl. ¶ 12; Tileston Decl. ¶ 5-6; Gomez Decl. ¶ 14.

After Plaintiff expressed safety concerns at SVSP, he was placed in the ASU, where his concerns were investigated. Pacifico Decl., Ex. A at 27-28, 31-33, 36-38; Jackson Decl. ¶ 4, Ex. A. As part of investigating any alleged safety concerns, prison officials document each inmate's safety concerns according to § 3378(a) of Title 15 of the California Code of Regulations, which explains the need to document "[a]ny information regarding an inmate/parolee which is or may be critical to the safety of persons inside or outside an institution" on a CDC Form 812. Cal. Code Regs., tit. 15, § 3378(a) (brackets added). As explained above, the CDC Form 812 shall be updated as any critical information becomes known and is documented in the inmate/parolee's central file. Cal. Code Regs., tit. 15, § 3378(b)(1). The undisputed facts show that Plaintiff's CDC Form 812 was frequently updated well before he arrived at PVSP. *See* Jackson Decl., Ex. A at 2-3. Specifically, the undisputed evidence reflects that Defendants Jackson and Williams reviewed and updated Plaintiff's CDC Form 812 four times in 2010. *Id*. As Defendants assert, there is no evidence that there were known enemy concerns at PVSP during this period. *Id*. After reviewing his case factors, including the CDC Form 812 in Plaintiff's central file, Defendants

Binkele, A. Solis, and V. Solis, as ICC members, recommended that Plaintiff be transferred to either RJD or PVSP. Pacifico Decl., Ex. A at 36-38, 41, 47-51; Binkele Decl. ¶ 15; A. Solis Decl. ¶ 14; V. Solis Decl. ¶ 11-12. Because there were no documented enemy concerns at PVSP, it cannot be said that the recommendations for Plaintiff's transfer to PVSP was unreasonable. There is no evidence Plaintiff's CDC Form 812 had not been updated such that Defendants were aware that a failure to update Plaintiff's file meant there existed a substantial risk of serious harm to Plaintiff. Considering Defendants had been involved in the decision by way of recommendations, it could perhaps be shown that they acted with deliberate indifference if they recommended the decision despite their knowledge of a substantial risk of serious harm to Plaintiff. *Farmer*, 511 U.S. at 842. However, there is no evidence that Defendants had actual awareness of such a risk, without which there can be no liability. *Harrington*, 785 F.3d at 1304.

Plaintiff argues that he was originally endorsed for transfer to RJD, a prison where he had no safety concerns. Dkt. 1 at 14, 17; Binkele Decl. ¶ 14; Pacifico Decl., Ex. A at 38. Plaintiff claims that Defendants acted with deliberate indifference to his safety when they "facilitate[ed] [his] removal from the scheduled transportation list for transfer to [RJD]" with the aim of causing him to be transferred to PSVP "where he was likely to suffer personal injury." Dkt. 1 at 33 (brackets added). As explained above, Plaintiff had filed 602 appeal log no. SVSP-L-10-02013 on July 26, 2010, claiming that his transfer to RJD was interfered with due to retaliation by SVSP staff members. *See* Voong Decl., Ex. D. Plaintiff also sought to know why he was not transferred to RJD. *See id.* at 4. Specifically, Plaintiff claims that another inmate named Ingram had been endorsed for transfer to RJD on January 15, 2010 and that Inmate Ingram had been transferred "approximately three (3) weeks" prior to July 26, 2010. *Id.* According to the Director's Level Appeal Decision for SVSP-L-10-02013, Plaintiff "was not transferred at the same time as Inmate Ingram because his case factors had not been completed at the time the bus with his reserved seat arrived at SVSP." *Id.* at 2. The Court notes that Plaintiff had only been approved on June 1, 2010 while Inmate Ingram had been approved almost five-and-a-half months earlier on January 15, 2010, and the bus on which Inmate Ingram had been transported departed around the beginning of July. The third level reviewed further indicated that in the review of SVSP-L-10-02013 at the

24

United States District Court
Northern District of California

second level of review, Defendant Medina noted that "the institution's staff and administration are not given the authority to transfer inmates at will . . . [and that] [e]ach institution is provided with a variable number of bus seats to other specific institutions." *Id.* More importantly, the reviewer noted that Plaintiff "ha[d] not been singled out as many other inmates [were] waiting to transfer to other institutions." *Id.* Thus, the record shows that Plaintiff was not *removed* from the transportation list to RJD, and instead he was not able to be cleared for transfer to RJD due to SVSP staff's failure to complete Plaintiff's case factor documentation prior to the bus arrival. Voong Decl., Ex. D at 4. Based on this reason, SVSP prison staff was not able to reserve Plaintiff a seat on the bus for transfer to RJD at the same time as Inmate Ingram, who had been endorsed for transfer five-and-a-half months before Plaintiff. Monroy Decl. ¶ 19. Nothing in the record indicates that Plaintiff had been singled out. Thus, Defendant Medina reasonably rejected SVSP-L-10-02013 at the second level of review relating to any retaliation or due process claims stemming from the failure to transfer to RJD because Plaintiff was told that his case factor documentation was not completed prior to the bus arrival. The third level reviewer of SVSP-L-10-02013 found that the institution "ha[d] presented [Plaintiff] a thorough and comprehensive review of the issues and the examiner [found] no basis to alter the [second level of review] decision" by Defendant Medina. Voong Decl., Ex. D at 4. While Plaintiff requested to be transferred to RJD, the transfer recommendation had to be reviewed again by the ICC because the previous endorsement to transfer Plaintiff to RJD expired on September 29, 2010. Voong Decl., Ex. D at 2. Therefore, SVSP-L-10-02013 was reasonable denied and no relief was warranted because Plaintiff's transfer recommendation was still being reviewed by the ICC. (As noted, on October 26, 2010, CSR Ligon endorsed Plaintiff for transfer to PVSP due to lack of bed space at RJD. Pacifico Decl., Ex. A at 47-51.) Additionally, Defendant Muniz reasonably rejected another appeal, 602 appeal log no. SVSP-L-10-01583, relating to the retaliation claim in connection with enemy documentation and safety concerns, because Plaintiff would be scheduled for an interview with Defendant Jackson to discuss enemy concerns. Jackson Decl. ¶ 14; Monroy Decl. ¶ 17, Ex. B at 14. Defendant Tileston conducted an inquiry into the third appeal, 602 appeal log no. SVSP-L-10-03011, relating to the eventual endorsement to PVSP and reasonably found that the

25

endorsement appropriate based on no potential threat at PVSP. Tileston Decl. ¶ 5-6. Based on the fact that there were no documented enemy concerns at PVSP, the actions of Defendant Gomez and her staff in facilitating the transfer to PVSP were acceptable and reasonable under the circumstances. Gomez Decl. ¶ 4.

Lastly, Plaintiff sets forth no evidence that he was injured by anyone while he was at PVSP. Levya Decl. ¶¶ 5-6; Morgan Decl. ¶¶ 5-6. Even if Plaintiff had been involved in a physical altercation after his transfer to PVSP, he at most would state a negligence claim against Defendants, which is not cognizable under section 1983. *See Farmer*, 511 U.S. at 835-836 (negligence does not constitute deliberate indifference). Furthermore, even though Plaintiff suffered a nervous breakdown on January 20, 2011 after he had been transferred to PVSP, *see* Dkt. 1 at 32, PVSP officials reacted promptly by admitting him to the California Medical Facility and then immediately transferring him out of PVSP twenty-six days later, on February 15, 2011, *see* Pacifico Decl., Ex. A at 12.

In sum, having considered all the evidence submitted, the Court finds there are no genuine issues of material fact to preclude summary judgment in favor of Defendants with respect to Plaintiff's deliberate indifference to safety claim. *See Celotex Corp.*, 477 U.S. at 323. Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law. *Id.*; *Celotex Corp.*, 477 U.S. at 323.

### D.    Analysis of Retaliation Claims Against Defendants

Plaintiff cites the First Amendment and alleges in his complaint that Defendants' aforementioned actions of being deliberately indifferent to his safety were in retaliation for Plaintiff submitting formal grievances and filing a previous lawsuit. Dkt. 1 at 33. Specifically, Plaintiff claims: (1) Defendants Tileston, Medina A. Solis and Jackson retaliated against him by failing to record his safety concerns; and (2) all Defendants retaliated against him by acting with deliberate indifference based on their involvement in his transfer to PVSP.

Retaliation by a state actor for the exercise of a constitutional right is actionable under

United States District Court
Northern District of California

section 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). Retaliation is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights, even though retaliation is not expressly referenced in the Constitution. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)) (brackets added). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.*

### 1. Retaliation Based on Failure to Record Safety Concerns

Plaintiff asserts that Defendants' involvement in failing to document Plaintiff's central file

and safety concerns appropriately was in retaliation for filing formal grievances and a previous lawsuit. Dkt. 1 at 34.

Although self-serving affidavits may establish a genuine issue of material fact, they may do so only when "they state facts based on personal knowledge and are not too conclusory." *Rodriguez*, 265 F.3d at 902. Here, Plaintiff's allegations in his complaint are no more than conclusory and are insufficient to establish a genuine issue of material fact. *See id.* With respect to Plaintiff's claim that Defendants Medina, A. Solis, Jackson, and Tileston failed to record his safety concerns by not properly updating his central file to reflect all known enemies as retaliation, the evidence indicates the contrary. Plaintiff's request to meet with a counselor to address his enemy concerns were granted, and his central file was updated accordingly. Monroy Decl. ¶ 17, Ex. B; Jackson Decl. ¶ 4, Ex. A; Jackson Decl. ¶ 14; Voong Decl. ¶ 7, Ex. B. Plaintiff has proffered no foundational evidentiary support for his assertion against Defendants. Because Plaintiff has not presented evidence in support of his retaliation claim against Defendants regarding a failure to record safety concerns, Defendants are GRANTED summary judgment on this claim.

### 2. Retaliation Based on Transfer to PVSP

Plaintiff asserts that Defendants' involvement in making recommendations and decisions to transfer him to PVSP was in retaliation for filing formal grievances and a previous lawsuit. Dkt. 1 at 33.

Again, Plaintiff's conclusory allegations are insufficient to establish a genuine issue of material fact. *See Rodriguez*, 265 F.3d at 902. Plaintiff has not demonstrated that Defendants took any adverse action against him regarding his transfer to PVSP. As the Court has found above, no reasonable jury could have found Defendants' actions relating to his transfer to PVSP showed that they were deliberately indifferent to his safety needs. Specifically, the Court determined that Plaintiff failed to show that Defendants were deliberately indifferent in their investigation of his safety concerns and their prison transfer recommendations and decisions.

Based on the evidence in the record, no reasonable juror could find that Defendants' recommendations and decisions relating to his eventual transfer to PVSP were made in retaliation

for Plaintiff filing formal grievances. Put simply, Plaintiff's retaliation claim against Defendants is based on little more than Plaintiff's speculation that their actions were retaliatory, and that is not enough to defeat summary judgment. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (speculation that defendants acted out of retaliation not sufficient to defeat summary judgment). Instead, as explained above, Defendants' recommendations and decisions regarding Plaintiff's housing assignment and eventual transfer to PVSP, through the ICC and through the appeals process, made by Defendants A. Solis, V. Solis, Binkele, and Tileston, were in furtherance of advancing the legitimate correctional goal of providing a safe housing assignment to Plaintiff who had expressed safety concerns.

Furthermore, Plaintiff claims that Defendants' alleged involvement in his transfer to PVSP was in retaliation not only for filing formal grievances but also for filing a previous lawsuit against Defendant Williams. As explained above, Plaintiff previously filed a civil complaint against Defendant Williams and other SVSP prison officials for allegedly engaging in race-based discrimination with respect to work assignments.[7] *See* Case No. C 09-4081 JW (PR). Because Plaintiff filed the aforementioned civil complaint, Plaintiff believes Defendant Williams ". . . utilized his personal experience, and influence within the Department, to arrange for the furthering of his aims to cause plaintiff to suffer personal injury at [PVSP]." Dkt. 1 at 31 (brackets added). However, Plaintiff does not set forth any evidence showing the requisite elements of a First Amendment retaliation claim against Defendant. Instead, his claim is speculative and insufficient to create a factual dispute. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.") Plaintiff believed that the other named Defendants' personal relationship with Defendant Williams dictated their actions. Dkt. 1 at 13, 16-17, 19, 22, 28, 33-34. However, Plaintiff has not provided evidence to support his conclusory retaliation claims to prove Defendants' motivation. Mere speculation that Defendants acted out of retaliation

United States District Court
Northern District of California

---

[7] In Case No. C 09-4081 JW (PR), the Court granted Defendants' motion for summary judgment on the merits upon finding that no constitutional violation occurred. *See* Dkts. 44, 45 in Case No. C 09-4081 JW (PR).

1  for a previous lawsuit is insufficient.  *Wood*, 753 F.3d at 904 (citing cases) (affirming grant of

2  summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that

3  defendants' disparaging remarks were made in reference to prior lawsuit).

4  In sum, Defendants are entitled to summary judgment on Plaintiff's First Amendment

5  retaliation claims against them relating to his transfer to PVSP.

6  **E.    Analysis of Due Process Claims**

7  Plaintiff cites the Fourteenth Amendment and alleges that Defendants "abused their

8  discretionary authority . . . to deny [his] appeals concerning safety issues, . . . facilitat[ed] [his]

9  removal from the scheduled transportation list, . . . [and] failed to appropriately record in [his]

10  Central File Record . . . "  Dkt. 1 at 33-34 (brackets added).  Specifically, Plaintiff claims his due

11  process rights were violated because: (1) Defendants Gomez, Williams, A. Solis, V. Solis,

12  Medina, and Jackson removed his name from the transportation list for transfer to RJD leaving

13  him to be transferred to PVSP; and (2) Defendants Medina, Muniz, A. Solis, V. Solis, Jackson,

14  and Tileston denied his appeals regarding safety issues and relating to his eventual transfer to

15  PVSP.

16  Defendants assert that the due process claim against them is without merit because Plaintiff

17  has failed to allege or show the deprivation of a protected liberty interest.  Dkt. 49 at 27-28.

18  Furthermore, even if Plaintiff's due process right was implicated, Defendants assert that the

19  evidence demonstrates that Plaintiff was afforded all procedural protections.  *Id.*

20  Interests that are procedurally protected by the Due Process Clause may arise from two

21  sources—the Due Process Clause itself and laws of the states.  *See Meachum v. Fano*, 427 U.S.

22  215, 223-27 (1976).  In the prison context, these interests are generally ones pertaining to liberty.

23  Changes in conditions so severe as to affect the sentence imposed in an unexpected manner

24  implicate the Due Process Clause itself, whether or not they are authorized by state law.  *See*

25  *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980)

26  (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary

27  administration of psychotropic drugs)).  A state may not impose such changes without complying

28  with minimum requirements of procedural due process.  *See id.* at 484.  Deprivations authorized

by state law also may amount to deprivations of a procedurally protected liberty interest provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, that is, give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *Sandin*, 515 U.S. at 477-87.

Here, Plaintiff offers no evidence demonstrating any violation of his due process rights. Instead, Plaintiff vaguely states that "[t]he decisions and acts of the Defendants were malicious, and reckless, and under the circumstances, and the facts before them, they were clearly in violation of established law; and served no legitimate penological interest while arbitrarily depriving Plaintiff due procedural process." Dkt. 62 at 10. However, Plaintiff offers no statutory or legal authority showing that his due process were violated based on the failure to be transferred to RJD (where he was originally endorsed for transfer) and the denial of his inmate appeals. As explained below, Plaintiff fails to show that his claims amount to a due process violation.

### 1. Due Process Violation Relating to Failure to Transfer Him to RJD

With respect to Plaintiff's claim relating to the failure to transfer him to RJD, Defendants argue that Plaintiff's preference to transfer to RJD does not implicate the due process clause. Dkt. 49 at 28. The Court agrees. To the extent that Plaintiff was merely dissatisfied with his housing assignment, such a claim does not amount to a violation of due process. *See Meachum*, 427 U.S. at 225 ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."). Moreover, prisoners have no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). California's transfer regulations also do not create a constitutionally protected liberty interest because they contain no substantive limitations on prison officials' discretion to grant or refuse the transfer of prisoners. *See* Cal. Penal Code § 5080; Cal. Code Regs. tit. 15, § 3379; *People v. Lara*, 155 Cal. App. 3d 570, 575-76 (1984) (discretion to transfer inmates is vested in the Director of Corrections). A provision that merely provides procedural requirements, even if mandatory, cannot provide the basis for a constitutionally protected liberty interest. *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). Because the aforementioned statutory language does not meet the

first prong of the *Sandin* test, no protected liberty interest requiring constitutional protection is created and Plaintiff fails to state a claim for relief.

Even if Plaintiff's due process rights were implicated, the evidence demonstrates that he was given notice and an opportunity to be heard as shown by the fact that he filed a grievance challenging the failure to transfer him to RJD. *See* Log No. SVSP-L-10-02013. In SVSP-L-10-02013, which pertained to his alleged retaliatory removal from the transportation list to RJD, Plaintiff pursued this appeal to the third and final level. As explained in detail above, Plaintiff was informed that he was not *removed* from the transportation list to RJD, and instead he was not able to be cleared for transfer to RJD due to SVSP staff's failure to complete Plaintiff's case factor documentation prior to the bus arrival. *See* Voong Decl., Ex. D at 4. Because nothing in the record indicated that Plaintiff had been singled out, the Court found above that Defendant Medina reasonably rejected SVSP-L-10-02013 at the second level of review relating to any retaliation or due process claims stemming from the failure to transfer Plaintiff to RJD. The third level reviewer of SVSP-L-10-02013 found no basis to alter Defendant Medina's second level decision based on the fact that Plaintiff was given a "thorough and comprehensive review of the issues." Voong Decl., Ex. D at 4. Again the Court notes that, while Plaintiff requested to be transferred to RJD, the transfer recommendation had to be reviewed again by the ICC because the previous endorsement to transfer Plaintiff to RJD expired on September 29, 2010. Plaintiff's was then eventually endorsed for transfer to PVSP due to lack of bed space at RJD and only upon the conclusion that no safety concerns existed at PVSP. Furthermore, the Court notes that the initial decision to transfer him from SVSP and his eventual endorsement to PVSP were made in response to his self-expressed safety concerns at SVSP. Pacifico Decl., Ex. A at 27-28, 31-33, 36-38, 41, 47-50; Jackson Decl. ¶ 4, Ex. A. As such, the Court finds no merit to Plaintiff's due process claim relating to the failure to transfer him to RJD.

### 2. Due Process Violation Relating to Denial of Appeals

Defendants argues that Plaintiff's claim pertaining to the denial of the two other grievances he submitted (challenging his endorsement for transfer to PVSP, and the incomplete documentation of known enemies in his central file), do not trigger a liberty interest of

1  constitutional proportions. Dkt. 49 at 27. Defendants further argue that their involvement in the

2  review and resolution of inmate grievances, without more, is not actionable under section 1983.

3  *Id.* at 28 (citing *Ramirez v. Galaza*, 334 F. 3d 850, 860 (9th Cir. 2003), *Mann v. Adams*, 855 F.2d

4  639, 640 (9th Cir. 1988)).

5       Defendants rely on two Ninth Circuit cases in support of the proposition that the

6  processing of administrative grievances cannot form the basis of a claim for relief under 42 U.S.C.

7  § 1983. In *Mann v. Adams*, the Ninth Circuit held that a state's unpublished policy statements

8  establishing a grievance procedure did not create a constitutionally protected liberty interest. 855

9  F.2d at 640. Although the Ninth Circuit did not discuss the plaintiff's claim in the context of any

10 specific constitutional right, state-created liberty interests are an element of Fourteenth

11 Amendment due process claims. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Ramirez v.*

12 *Galaza*, the Ninth Circuit held that "inmates lack a separate constitutional entitlement to a specific

13 prison grievance procedure," and applied that proposition to reject "*Ramirez*'s claimed loss of a

14 liberty interest in the processing of his appeals . . . ." 334 F. 3d at 860.

15      The holdings in *Mann* and *Ramirez* do not stand for the broad proposition that the

16 processing of an administrative appeal cannot, under any circumstance, form the basis of a claim

17 to relief under section 1983. Instead, they are limited to holding that a prisoner has no substantive

18 right to a prison grievance system and, therefore, due process claims based on the denial of or

19 interference with a prisoner's access to a prison grievance system are not cognizable. However, if

20 the individuals who deny a prisoner's appeals had the authority and opportunity to prevent an

21 ongoing constitutional violation, he may be able to establish liability by alleging that they knew

22 about an existing or impending violation and failed to prevent it. *See Taylor v. List*, 880 F.2d

23 1040, 1045 (9th Cir. 1989) (supervisory official liable under section 1983 if he knew of a violation

24 and failed to act to prevent it); *see also Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.

25 1998) (supervisor who signed internal affairs report dismissing complaint against officer despite

26 evidence of officer's use of excessive force may be liable for damages).

27      Here, during its initial review of Plaintiff's claims, the Court determined that he was not

28 claiming his right to due process was violated by the denial of his administrative appeals or

obstructed access to a prison grievance system. Dkt. 4 at 3. Rather, the Court determined that Plaintiff had stated a cognizable due process claim by alleging that Defendants' denials of his appeals violated his rights under the Fourteenth Amendment (as well as the First and Eighth Amendments, as explained above) because they had the authority to remedy the alleged violations but failed to do so. *Id.*

Defendants next argue that even if Plaintiff's due process rights were implicated, the evidence demonstrates that he was given notice and an opportunity to be heard in relation to his grievances. Dkt. 49 at 28. The Court agrees. Again, the record shows that Plaintiff was given notice and opportunity to be heard through the appeals process, which pertained to the denial of his two other relevant appeals relating to the retaliation based failure to document his safety concerns, and his wrongful transfer to PVSP. The record shows that Plaintiff was able to go to the third and final level on all these appeals. Voong Decl. ¶ 8, Ex. A. As such, any due process claim involving Defendants' decision-making in the prison's appeals process necessarily fails.

In sum, based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's due process claim. *See Celotex Corp.*, 477 U.S. at 323. Accordingly, Defendants are entitled to judgment as a matter of law on this claim. *Id.*

## F. Analysis of Claims Against Unserved Defendant Williams

Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) Plaintiff has been provided an opportunity to address the controlling issues. *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir. 1995).

As mentioned above, Defendant Williams has not been served and has not joined the other Defendants in their motion for summary judgment. The allegations pertaining to the First and Eighth Amendments against unserved Defendant Williams are the same as those against served Defendants. There is no suggestion in the briefs and exhibits filed in connection with the present motion for summary judgment that the analysis differs with respect to unserved Defendant Williams as opposed to the aforementioned served Defendants. *See Columbia Steel Fabricators, Inc.*, 44 F.3d at 803 (affirming grant of summary judgment in favor of non-appearing defendant

where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against non-appearing defendant). Accordingly, Defendant Williams is entitled to summary judgment as a matter of law.

## III. CONCLUSION

The evidence established that there is no triable issue of material fact, and each Defendant is entitled to summary judgment on all claims. For the reasons outlined above, the Court GRANTS Defendants' motion for summary judgment[8] against the served Defendants, and also as to the claims against unserved Defendant Williams.

The Clerk shall terminate all pending motions and close the file.

This Order terminates Docket No. 49.

IT IS SO ORDERED.

Dated: July 10, 2018

YVONNE GONZALEZ ROGERS
United States District Judge

---

[8] The Court's finding that Defendants are entitled to summary judgment as to all claims in Plaintiff's complaint obviates the need to address Defendants' alternative arguments in their motion for summary judgment, including that: (1) Plaintiff's claims fail because he only partially exhausted his administrative remedies and filed them well beyond the statute of limitations and, (2) Defendants are entitled to qualified immunity.